Breitel, J. (concurring).
I agree that there should be an affirmance but only because the Superintendent, who had the onus, has not established that petitioners engaged in illegal discrimination in curtailing their underwriting in Harlem and Bed-ford-Stuyvesant. To establish that, the Superintendent had to do more than show a harmful effect to those communities from petitioners’ business practices. On the other hand, it does not follow that because petitioners were undoubtedly, or others would be, motivated by commercial self-interest that they are entitled to the conclusion that they could not have been guilty of illegal discrimination. Most discrimination is not the product of “ disinterested malevolence ”, that is malevolence unaccompanied with any acceptable social or economic self-interest. In any event, it is not incumbent upon the court to make such a finding; its review is limited to the existence of substantial evidence for the Superintendent’s determination.
The significance of the distinction is that it would be a backward step to conclude that economically explainable discrimination by a regulated industry or utility, otherwise violative of declared legislated public policy, may be lawful just because a commercial or other legitimate reason may be assigned (Burton v. Wilmington Parking Auth., 365 U. S. 715, 724-725; cf. Matter of Holland v. Edwards, 307 N. Y. 38, 44-45). Racial discrimination in employment could never have been made illegal if that had been the applicable rule. It needs little reflection to realize that insurers with ample opportunities to extend their underwriting *61 would find it profitable and, therefore, economically desirable to withdraw from high risk areas. In doing so they would not care whether the rejected coverages were for white insureds or not, whose presence and low cost of doing business might be quite vital to the nonwhite community. The reason this case is particularly troublesome and the Superintendent has failed to sustain his determination is that it has been fundamental and legally acceptable in the insurance industry to classify risks on territorial bases if supported by actuarial data.
Judges Burke, Scileppi, Bergan and Gibson concur with Chief Judge Fuld ; Judge Breitel concurs in a separate opinion in which Judge Jasen also concurs.
Order affirmed, without costs.